Good afternoon, Your Honors. May it please the Court, Kara DeVito for Defendant and Appellant, Isaiah Reed. Your Honors, I quickly want to correct something from the reply brief. At page 7, I cited a case, People v. Moss, by an intermediate court of appeal in California that has since been superseded by a grant of review. It is being held behind a lead case called People v. Barker. And in both of those cases, the California Supreme Court is about to decide whether or not I forgot is a defense to a failure to register or re-register under Penal Code 290. I'm sorry. Say that one more time, what the Court is about ready to decide. The issue the California Supreme Court has granted review on in both of those cases is whether or not an affirmative defense of I forgot overcomes the willfulness to review in a failure to register. I forgot. That's what I didn't hear. Okay. Sorry. Are you suggesting that we should be deferring our decision? No, Your Honor. I had argued that case simply to show that a failure to register or re-register is not something of paramount importance to California law if the strict liability aspect of the statute could be overcome by an I forgot defense. Was an I forgot defense made in this case? No. To be candid, Your Honor, no. My client said he was aware of it at one time. An uncle died. It slipped his mind. It was partly an I forgot defense, but it wasn't emphasized in the trial court. That wasn't the gist of the defense. Counsel, my first question about this is, even if this falls within the rare exception, I think the Supreme Court used the word rare in Andrade, nevertheless, how can we call the California decision an unreasonable application of Federal authority, since there's no Federal authority that really runs contrary? Your Honor, in a line of cases beginning with Romel v. Itzdell and then Harmelin and then Lockyer, the U.S. Supreme Court has repeatedly said that if a case is brought before it where something as innocuous as overtime parking results in a life sentence, it would be strongly persuaded there was no fault. That was the dictum in Andrade. It said they left the hole open for a rare exception, and they gave as a hypothetical case the overtime parking offense. But they don't seem to have plugged that hole with much besides the overtime parking, and even that's dictum. And under AEDPA, it's not just enough for us to say that under Ninth Circuit authority, which doesn't count under AEDPA, the State court is wrong. It's not enough for us to say that in our judgment the State court is wrong. We have to say it was not only wrong, but unreasonable. And I'm wondering how we get there. Your Honor, in addition to the dictum that establishes what at the moment is a presumptive floor, the U.S. Supreme Court in Andrade and Ewing has now established for the moment a presumptive ceiling above which sentences are not cruel and unusual. The ceiling in that case was for petty theft with a prior, which elevates to a felony. As Mr. Reed's briefs point out, the petty theft of a prior is not a presumptive ceiling. By ceiling, I mean what you were saying, there's a gray area. The overtime parking is the lower limit. That and anything below it. They said shoplifting a few videotapes was enough for a life sentence in Andrade. Right. So there's a floor of the overtime parking example and a ceiling of petty theft with a prior. And somewhere in between there, in that gray area, are the cases which these courts, this circuit and other circuit courts, have to start hammering out now. What is the unreasonable application? As I understood Andrade, they were saying, sure, shoplifting a few videotapes isn't that big a deal, but it's big enough in light of this person's priors. And when I apply that to this case, maybe and maybe not, failure to register as a sex offender isn't that big a deal. I don't know if it counts as a bigger or smaller deal than shoplifting some videotapes. But nevertheless, when I look at the priors, this fellow's priors are really bad. Robbery, assault with intent to commit rape, that sort of thing. Yes, Your Honor. Any of the predicate priors that qualify someone for three-strike sentencing are going to be bad. They're always going to be some form of sexual assault or a home invasion, burglary of some kind, or any felony in which someone uses a gun, or rape, or an arson, or murder. That's going to be the same for everyone. Now, whether somebody has two qualifying priors or 20 could make a difference in the initial first-factor Harmelin analysis. This fellow is closer to the 20-end than the 2-end. Your Honor, he has four qualifying priors, and he has other non-qualifying priors as well. It's true. He also has one that's not. Does it matter for our purposes how bad the qualifying priors are? That is to say, does it matter whether he killed three people or whether he was guilty of felony robbery and felony attempted sexual assault? Or are we supposed to focus not on how bad the priors were, but rather merely on what the triggering third offense is? Do we have established law on that? No. There is the established law that you don't at the moment look at the third triggering offense. You can look at someone's entire prior history. At least that's what the California courts are doing. A qualifying prior is a qualifying prior, and the courts do a quantitative analysis on occasion. But I'm off. I'm sorry. Just to follow up. In conducting the gross proportionality analysis that the Supreme Court has said for many, many years, way before Andrade and Ewing, should be conducted, don't you have to weigh the length of time, along with the past criminal convictions, along with assigning a weight to be given to the triggering offense? Ideally, that would be the way it would be done. Did the Court of Appeals in California do that here? No, Your Honor. They did not. So why isn't that the answer to the question as to why what the California Court of Appeals did is objectively unreasonable? If it didn't conduct the analysis at all, how could that be consistent with, you know, an objectively reasonable application? Your Honor, I want to agree with you, because it helps support my position. But as both Andrade and Ewing acknowledge, prior Supreme Court precedent in this area has not been clear. Well, hasn't the gross proportionality principle always been clear, at least since Harlan? No? Your Honor, it's a plurality opinion. What's clear about that? And again, I'm playing devil's advocate here, because I want to know. I don't know why you're playing devil's advocate. I would not be conceding the position against me. I'm just exploring the issue with you. I know. But if I have to be honest with this Court, I can't say that there is such clear U.S. Supreme Court authority out there. Now, I think that's a good point. Let me go at it this way. We do know, as a conceptual sort of abstract vocabulary matter, that gross disproportionality is the trigger. And if there's gross disproportionality, the sentence is too long under the Eighth Amendment. That we know. How long is too long, or what constitutes gross disproportionality, is the question. But the fact that gross disproportionality is the triggering analysis, that we know. We also know that the Supreme Court in Andrade, in a case where EDPA applied, that is to say, how erroneous or how unreasonable the state court decision was already in play, the court held five to four that this was not so bad as to be grossly disproportional under EDPA. So I think we actually know quite a bit about both the gross disproportionality question and about what EDPA does here. So to my mind, the question is, is it, I can say it in a sort of a functional way, or I can say it in an abstract and conceptual way, is this crime enough less than the crime in Andrade that it would get one more vote on the Supreme Court? Because that's all it takes. It has to be less than, because it's a crime of strict liability and not a crime of mens rea. Well, I would say it somewhat differently from that. Yes, it is strict liability, but it's also what the old-fashioned criminal law professors would call malum prohibitum, not malum in se. That is to say, it's only bad because it is prohibited by statute. Further under the case law, and this, I think, ties more closely into the language of the decided cases in this area, it's passive. You can have malum prohibitum that's an active crime, but here this is not only malum prohibitum, but also his offense was to do nothing. Counsel, why would the malum prohibitum aspect help you in light of the Supreme Court's decision that these very harsh sentences are okay where the offense is that possession or sale of drugs, that's a malum prohibitum offense? Your Honor, my time is up. Can I continue? Go ahead and answer. In this particular offense, Your Honor, there is no one else involved other than the defendant. Someone either fails to register or they fail to re-register when they move or when they have a birthday. In a sale of drugs, there's someone else involved. There's another aspect that society is careful to protect against. Thank you, Counsel. Thank you, Your Honor. May it please the Court. David Glassman, Deputy Attorney General. I'll further respond in that belief. First, as the Court may be aware, I have cited a case decided since the filing of my brief, a case from a central district of California district court, Bartlett v. Duncan, and that was faxed to the Court when I found it at the end of last week. So I just wanted to point out that I've located to this point at least one district court decision addressing the identical point that is raised in this case. I'd like to turn, in light of the Court's questions, to my argument. Could you tell me what does the State have to prove to convict somebody of failing to register as a sex offender, particularly focused on any mental element? Well, two things about that, Judge Kleinfeld. The first is that I don't – in this case, it has never been claimed on appeal that there was any flaw in the sufficiency of the evidence in this case. I understand that doesn't address my question. Yes, and my question is, it is a crime of willfulness. It is not a specific intent offense. Failure to register requires an element of willfulness? It does. And that is addressed in the district court decision, coincidentally, that I also cited, in the Bartlett v. Duncan case. But I think that – What authority is there that it requires proof of willfulness? Your Honor, I would have to rely on the authorities discussed there, because that point was not raised in this case. Do you happen to recall what California Supreme Court case or what words in the statute we should look at? I'm sorry, Your Honor, but I don't. I don't. Counsel, I'm actually troubled by the malum prohibitum nature of the crime at issue. And I did read the decision in Bartlett v. Duncan by Judge Hatter that you provided to us. He doesn't really address that question. He doesn't really focus into the precise nature of the offense. I agree with what your statement and description of how he rules. But he doesn't really discuss that analysis. I'd like to try to explain that, then, Your Honor. First of all, I submit, and I think there was commentary to this effect earlier, that the – before I get there, I just want to make clear that I believe the threshold inquiry as recognized and, in fact, as made explicitly clear now in Andrade and in Ewing, and particularly in Andrade because that's the habeas case like this case, is that the only issue that we're addressing, the only issue that the Supreme Court looked at there, was whether or not the decision that the punishment imposed does not violate the Eighth Amendment, violates the very isolated, exceedingly rare circumstance of gross disproportionality. Having said that, I'd like to turn more specifically to your question. And that, I think, has to do with the way in which this offense is characterized. To say that this is a mere failure-to-notify case, that it's triggered merely by an innocent or innocuous failure to recollect, I don't think is borne out by the circumstances of this case. The fact is, and this is conceded by appellant in his brief, the fact is that California deems a requirement of registration as an important one because the legislature in California has decided, and we know from Andrade that a legislative determination with respect to sentencing and recidivism is important. The California legislature has decided that convicted sex offenders pose a particular danger of reoffending. And that, I think, explains the public interest involved in the registration requirement. We also know that the crime is deemed a continuing crime. And that is also conceded by this defendant. So that when he says, I just forgot to register, this is an I forgot case, he ignores or avoids the fact that the record indicates that for three years he misrepresented his residence. Can I ask you more with respect to the statute? I think it's a complete, as I read the statute, it's a complete violation. If more than five working days after the requirement to register, he has not registered. Is that right? That, I don't have a copy of the statute in front of me, Judge Fletcher. That sounds like the language of the statute. It better sound right because that's what the statute says. It says it's five days. And if it's more than five working days, you are in violation of that statute. Can you tell me, because what I have here in the briefs and in the excerpts of record, I've not yet read the full record, and it may or may not be elucidating on this point. How does it happen in this case that this defendant came to the attention of the authorities, that is to say, he was released, I believe, in 1994. So far as I can tell from the record, he has no offenses independent of this failure to register offense. We had an interview conducted by an officer several years ago in which he apparently stated, listen, I don't live with my mom. I live here with Robinson. I mean, why are we seeing this case? Just let me, I'd like to understand something of the circumstances of this particular conviction. Judge Fletcher, I focused on what, in my view, were the issues raised by this defendant, and they were not, frankly, a discussion of how it was that he came to be in violation when it is conceded that he was in violation. No, I'm not asking how he came to be in violation. I'm asking a different question. How did he come to the attention of the authorities, and why are they prosecuting? And from my review of the materials prior to this argument, I cannot respond to that because I had not reread any of the evidence that would have addressed that point. As far as the related point that the Court is making with respect to the history or the timeline involved, he is convicted in 1988 of the felony assault to commit rape. That conviction follows a string of convictions. I understand that, and that's not part of my question. Except that, Your Honor, he is released from prison in 1993, and the registration takes place early in 1994, and then there is the failure to re-register. That's correct. And here we are in 2003, and so far as I can tell in the record, there is no indication of any offense after his release in 1993, save the offense here. Is that correct? Well, there is no discussion in the record of what would be a triggering offense for purposes of this statute. Whether or not that speaks comprehensively to the man's history, I don't know. Well, one of the things I'm trying to figure out is, and one of the things the state wants to argue, is this is really a bad person. Look at all those priors. Does the state view it as relevant, not only the priors and how bad a person he was prior to his incarceration in 1988? He's then incarcerated, so that's kind of time out, I guess. He's released in 1993. Is it relevant or irrelevant that he appears to have been, except for the failure to register, a non-offending citizen? Does that make any difference? I don't believe it does. What is relevant- Now, let me ask it this way. Are you saying that it is relevant that he was a bad person before 1988 and irrelevant that he was a good person after 1993? No. I am saying, first of all, that there, I'm not aware of any evidence in this case, and certainly no argument that this appellant has made, that he is affirmatively some sort of good person merely because he- I'm sorry. If you could please answer my question, which is to say I'm trying to figure out how it can simultaneously be relevant that he was a bad actor prior to 1988. And there's no question but what he was. Yes. And how, at least in your view, it is irrelevant that he has committed no offense, at least as far as the record shows us, after 1993, save the one now in front of us. How can one be relevant and the other not? Because the question under lock here is whether or not the state court's evaluation of that, it complies with Supreme Court precedent here, just as in Andrade, rather. The state court does the same thing in both cases. It evaluates a prior history and it makes, it cites Rummel versus Estelle. Actually, it didn't. It cited Harmelin versus Michigan for its Eighth Amendment authority. And it doesn't really discuss it at all. There seems to be no, that is a distinction from the Andrade opinion to me. Your Honor. They discuss the criminal history. Your Honor, I'm sorry. On page 10 of the California Court of Appeals discussion, opinion in the case, there are two citations to, or at least one that I'm seeing here, two, rather, to Rummel versus Estelle. Okay. On page 11, there is a citation to Harmelin. I see that. The state court in this case, returning to Judge Fletcher's question, the state court in this case evaluated Petitioner's recidivism. And evaluated that in the context of the claim of cruel and unusual punishment. And I submit, Your Honor, that that is the only relevant inquiry, whether or not. Now, you see, I understand that. But you still, and maybe that you don't have a very good answer. And I'm not sure I have a very good answer. But I'm just trying to figure out the possible relevance of this offense in relation to what kind of person he is. I mean, that's the basic idea of recidivism and of the three-strike statute. But it seems to me somewhat, somehow counterintuitive that the state can argue, not only that he has the two triggering offenses, but that there are lots of other offenses and he's really a bad guy. Yes. But the state is, says that we cannot and should not consider that for a space of almost ten years, there's nothing in the record to show that there was any criminal offense save the failure to register. I would like, I'd like to answer that, Judge Fletcher. I'll go over to do it. And the answer is, and what I submit distinguishes this case from, ironically, from Ewing, what makes this a far more serious case, is in this case we have a determination made by a legislature that this type of person, that is, a sex offender, one who has committed a violent sexual assault, is likely to commit such a crime in the future. There is no washout for that. There's no determination by the legislature that, well, he's likely to intend to rape again, but not if he doesn't do so for three or four years. That is a continuing legislative determination that he, to paraphrase Andrade, has the onus of addressing, and he has not. And that applies regardless of whether he has a period where he's been free of any felony. This is outside the record, and I would fully understand if you don't know the answer to this, but can you give me some sense as to how this prosecution fits into a pattern by the state as to how frequently they prosecute people for failure to register? You know, Your Honor, honestly, my answer would be entirely, it wouldn't even be anecdotal. You don't know. Okay. Because I don't know, and. And there's no particular reason you should know. Okay. Fair answer. Well, counsel, I just want to go back to this carve of tales opinion for a minute. When you're conducting the gross disproportionality analysis, aren't you supposed to be looking at the nature of the crime of conviction for which the overall term of years is being imposed? Well, Your Honor, except that, when one looks at Andrade, I think the Court is clear there, and I think that's the basis of part of the concession that you heard today, that there is no particular approach that the Supreme Court said it has required in terms of making that gross disproportionality evaluation. And that is why the very, the more specific approach that you postulated earlier is not reflected in those cases. It's just troubling to me that you wouldn't examine the nature of the offense which triggers the three-strike statute. I mean, I completely accept the Supreme Court's Andrade-Ewing decisions of the three-strike statute in and of itself. But just for future cases and, you know, agree, maybe even agreeing with you that this particular failure to register is something that's more egregious than an ordinary malum prohibitum offense. There has to be some case where it's a malum prohibitum offense not maybe specifically directed at, by the legislature with a particular kind of continuing violation type statute, but which would fail that test even on habeas because of the nature of the crime involved. I understand the Court's question. I think what I would also, though, add to that is that there's been much of the focus here and the way this argument is framed focuses on the instant crime in isolation and in Andrade, in Ewing, in all these cases, the Supreme Court reminds us that part of this evaluation is the recidivism. And so what I would add is that what's also, what's been left out of this equation is that in California, in order to get here in the first place, one must have suffered the prior serious or violent felony convictions. So I think that I understand that the lawyer's position is that it's a malum prohibit because it's a malum prohibit. Andrade involves a case where that necessarily happened, where that's the only way the case is subject to the harsh penalty. Counsel, there's a dog that's not barking here, and I'm curious as to why. My impression was that your answer to Judge Wardlaw's question would have been page 1189 of Ewing v. California, where they say Ewing wasn't just convicted of stealing three golf clubs. He was convicted of stealing three golf clubs after previously having been convicted of at least two violent or serious felonies. But you're not giving that answer, so I must be wrong. What am I missing? Well, I was, excuse me, I'm sorry, Your Honor, but my impression is that I was by pointing out that it is the recidivism that is part of the analysis, namely the criminal history. You were alluding to that, then. I am. I see. So it is the history when viewed in combination with the instant crime. Your Honor — I read it differently. I read it as it was a theft offense viewed in light of the recidivism as opposed to an offense of doing nothing. And my point there, again, was that California does not deem registration to be a do-nothing type of violation, and that this petition — But in fact, that's exactly what it is. Factually, he did nothing, and therefore he violated the statute. If he had done something, he might have complied. But because he did nothing, he violated it. Well, one can view it that way, Your Honor. It can also equally well be viewed as he evaded the statute for years and was eventually apprehended. Because he did nothing. Now, that does not say that California does not view doing nothing as important, nor does it say that California should not view it as doing nothing as important.  That's correct. My time is long since up. Thank you, counsel. Thank you. Weed v. Roe is submitted.
judges: Kleinfeld, Wardlaw, W Fletcher